This case is on appeal from the September 22, 1997 judgment of the Erie County Court of Common Pleas, which sentenced appellant, Deshaun Jackson, following his jury conviction on three counts of complicity to commit felonious assault. On appeal, appellant asserts the following assignments of error:
 "I. THE TRIAL COURT DENIED DEFENDANT'S 6TH AND 14TH AMENDMENT RIGHTS TO CALL WITNESSES IN HIS OWN DEFENSE.
 "II. THE TRIAL COURT ERRONEOUSLY GRANTED DARNELL ALEXANDER A WITNESS CALLED BY THE DEFENSE, THE RIGHT TO ASSERT HIS 5TH AMENDMENT PRIVILEGE AGAINST SELF INCRIMINATION BECAUSE OF A POSSIBLE PROBATION VIOLATION.
 "III. THE TRAIL [sic] COURT ERRED BY REFUSING TO ALLOW DEFENSE COUNSEL THE RIGHT TO CALL DETECTIVE ROY PREWITT AS A DEFENSE WITNESS AS ON CROSS EXAMINATION.
 "IV. THE TRIAL COURT ERRED BY REFUSING TO GRANT DEFENDANT'S JURY INSTRUCTIONS THAT DARNELL ALEXANDER WAS NOT AVAILABLE TO THE DEFENDANT OR THE STATE AND THE JURY COULD NOT INFER ANYTHING FROM THIS.
 "V. THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, TO DISMISS THE STATE'S CASE BASED ON THE JURY'S INCONSISTENT VERDICT.
 "VI. THE TRIAL COURT ERRED BY RUNNING DEFENDANT'S SENTENCES FOR FELONIOUS ASSAULT CONSECUTIVE."
Appellant was indicted on three counts of felonious assault in violation of R.C. 2903.11(A)(2) and one count of carrying a concealed weapon in violation of R.C. 2923.12(A). Each count also carried a firearm specification. At trial, the following evidence was presented.
The three victims, Ladarrius Twymon, Vilas Jones, and Damien Stovall, testified that between 9:00 and 10:00 p.m. on March 13, 1997, they were walking along Pierce Street in Sandusky, Ohio. Jones testified that they were headed to Stovall's house on Harrison Street. However, Twymon and Stovall testified that they were headed to the home of Twymon's grandmother to borrow her car.
All three testified that while they walked, a black four-door car began to follow them. At the corner of Pierce and Clay Streets, the driver and passenger got out of the car and started to walk toward them. They all recognized the driver as Darnell Alexander, but could not see the other person's face. Twymon testified that the passenger wore a big, black winter coat with the hood pulled down to cover his face. However, Twymon and Jones believed that the other person was appellant because of how he walked. Stovall knew that appellant hung around with Alexander.
Jones and Stovall heard the people in the car say something as they began walking toward them. The victims turned and ran. At that time, the victims heard two shots fired at them, heard the bullets whistle by them, and heard Alexander calling them names. Twymon saw both Alexander and the other person holding a gun and firing. While Jones saw Alexander firing, he could not be certain that appellant had a gun or fired any shots. Stovall suspected Alexander was armed, but only saw him with his arm raised.
The victims knew Alexander because they had attended school together. The victims testified that they were members of a gang/group known as the south side. They also testified that Alexander and appellant were known members of a gang/group known as the east side. While the two groups do not get along, Twymon testified that he did not have any particular grievance against appellant. However, Twymon had previously had arguments with Alexander. Stovall also testified that he and Alexander had a conflict a few days prior to this incident.
The police investigated the scene and interviewed the victims and other witnesses. At the time, the victims all stated that they could not identify the passenger nor describe him, they were sure that both men had handguns, and that they were not sure who fired the shots. An officer searched a six-block area for casings from the two shots, but nothing was found. The police could not locate a car matching the description given. Another officer who was familiar with appellant and Alexander was unable to locate them or the vehicle that evening.
From further investigation, the police learned that Alexander was also accused of pulling a gun on Tyron Pickens a few days prior to this incident. Pickens also stated that Alexander had pulled a gun on Pickens' cousin, Tyron Alexander. Pickens believed that if anyone was with Alexander on March 13, 1997, it would have been appellant. Another officer who knows the gangs well believed that appellant and Alexander were very close and that they had carried guns in the past. Prior police reports also referenced a dispute between Alexander and Jones and that Jones had been looking for Alexander to kill him.
Laquann Alexander, Alexander's sister, testified that she lives on Clay Street. Late in the day on March 13, 1997, Alexander came to visit her. He knocked on the door and told her to watch the car he parked outside her home. A short time later, she heard two shots that sounded the same. She opened the door and saw her brother get into his car and leave. A few minutes later, appellant ran into Laquann Alexander's home. She thought appellant acted nervous and noted that he was pacing, but he would not say what had happened. She asked him if he had a gun, and he said that he did. A few minutes later, her brother came in and the two men left. She did not ask her brother if he had a gun because she knew that he usually did not carry one.
Moniquie Hood testified that she knows Alexander because she is a friend of his sister and Hood's sister lives with Alexander's sister. She is also acquainted with appellant. She testified that a few days after the incident, Alexander and appellant came into the convenience store where she works. She yelled at Alexander at the time for putting his sister in a position where she could get into trouble. Alexander then told appellant to tell Hood that Alexander did not do the shooting. Appellant said that Alexander did not do it, appellant did. Then appellant indicated with his hand that he was joking. She saw appellant a few days later and he said that he did not fire the shots. Appellant told her that the south side members were shooting at him.
Kristen St. John testified that she knows Alexander and appellant through her boyfriend, William Croft. On March 13, she was at a friend's house on Perry Street. Appellant came to the house that evening with Alexander. They wanted to borrow her car to go to the store. They both stated that they could not use Alexander's car because it was "hot." While she called Croft to ask if Alexander could use the car, she overheard them arguing about shots being fired. Hood overheard appellant state that he fired the gun and that Alexander was trying to start a fight.
William Croft testified that Alexander, appellant, and he were part of the east side gang. He testified that his girlfriend, Kristen St. John, paged him between 7:00 and 9:00 p.m. on March 13, 1997. He went to the home on Perry Street to talk to Alexander about borrowing Croft's car. Appellant admitted that he and Alexander had "rode up on them" and that while Alexander was talking to them, appellant pulled out a gun and started shooting. Appellant showed his gun to Croft, a silver 380. Croft recognized it as appellant's gun. Croft knew that appellant usually kept the gun in the trunk of his car in a toolbox or paper bag. Alexander and appellant were arguing in front of Croft about appellant carrying a gun that night. Alexander kept asking why appellant started shooting. Appellant said he shot because they started to run. When Croft found out that Alexander had been charged, Croft went to the police about this conversation. Croft believed that Alexander was not carrying a gun at that time. Croft admitted that he had pending criminal charges against him, but was not trying to make a deal for himself. Croft remembers that appellant was wearing white tennis shoes that night, but cannot remember the rest of his clothing. He believed that Alexander and appellant had gone to the south side that night because someone had been throwing rocks and other things at Alexander's mother's car.
Alexander was called to testify for the defense. However, outside the presence of the jury, he pled the Fifth Amendment based on the fact that anything he said could be used to prove a probation violation or lead to a "probable cause letter in that respect."
The defense then called Detective Prewitt. He testified that he interviewed appellant and Alexander. He also testified that with the "blessing of the Prosecutor's office," he made a deal with Alexander. He also talked to a lot of other people who called in after Alexander was charged with a crime and took some videotaped statements from some of them. The defense then proffered into evidence the videotaped interview of appellant and Alexander by the detective.
In his first assignment of error, appellant argues that he was denied his Sixth Amendment right to present witnesses in his own defense. Appellant intended to call Alexander as a hostile witness and cross-examine him. There was some discussion concerning appellant's ability to call any witnesses because he had not supplied the prosecution with a witness list. Appellant argued that he did not have to do so because he never requested discovery from the prosecution pursuant to Crim.R. 16(B)(1)(e). However, he admitted receiving discovery from the prosecution and requests for reciprocal discovery. The prosecution had supplied Alexander's name as a potential witness, but declined to call him as a witness at trial. The court permitted appellant to call Alexander as a witness, but would not permit appellant to cross-examine Alexander.
Criminal Rule 16 sets forth the procedure for obtaining discovery, the type of evidence that is discoverable, and the remedies for discovery violations. Crim.R. 16(C)(1)(c) provides that:
 "* * * If on request or motion the defendant obtains discovery under subsection (B)(1)(e), the court shall, upon motion of the prosecuting attorney, order the defendant to furnish the prosecuting attorney a list of the names and addresses of the witnesses he intends to call at the trial. * * *."
The defendant's duty to supply the prosecution with a witness list does not arise unless the defendant first requests discovery from the prosecution and the prosecution then requests the defense witness list. State v. Davis (Aug. 25, 1986), Montgomery App. No. 9472, unreported. While the discovery request may be made informally or by motion, the requests must be made in the order required by the rule. Id. Otherwise, the prosecution can force disclosure of the defense's witness list merely by voluntarily supplying the defendant with unrequested discovery material.
It is clear on the record in this case that appellant never requested discovery from the prosecutor. While the. prosecution did provide the defense with certain discovery material, it was not obligated to do so and its actions did not create a duty on the part of the defense to disclose its witness list. Therefore, we find that the trial court erred as a matter of law when it sanctioned appellant for failing to disclose his witness list. However, this error does not constitute reversible error because appellant failed to proffer Alexander's testimony. Thus, he has not preserved this issue for review. Evid.R. 103(A)(2) and State v. Gilmore (1986),28 Ohio St.3d 190, 191.
Furthermore, since Alexander asserted his Fifth Amendment right not to incriminate himself, and we find in Assignment of Error No. Two that he was justified in doing so, the error of the trial court in limiting appellant's examination of Alexander is also moot.
Accordingly, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant argues that the trial court erred when it permitted Alexander to assert his Fifth Amendment right against self incrimination. Appellant contends that this right may not be invoked merely because of a threat of a probation violation.
While appellant focuses on Alexander's concern that his testimony might be used against him in a probation violation hearing, there still remains a reasonable possibility that he may be indicted on charges stemming from the shooting incident itself. There is nothing in the record to indicate that the prosecution cannot charge him with a similar crime. The fact that they had previously dropped the charges against him relating to this incident is irrelevant. Accordingly, appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant argues that the trial court erred by preventing appellant from calling Officer Prewitt as a hostile witness. However, it is unclear from the transcript or appellant's brief as to what relevant evidence would have been elicited from Prewitt by cross-examination.
On direct examination by appellant, Prewitt testified that Alexander was initially charged with three counts of felonious assault and carrying a concealed weapon. Prewitt further testified that "with the blessing of the prosecutor's office," the charges were dropped. Appellant proffered a videotaped recording of Prewitt's interview of Alexander and appellant. The substance of Alexander's statement to Prewitt was that he was innocent and that appellant fired the gun that night. During the interview, Prewitt laid out the prerequisite for Alexander's deal with the police.
Appellant argues in his brief that he was unable to present to the jury evidence of the deal Alexander made with the police. However, this statement is not true. In fact, Prewitt testified that he made a deal with appellant and the charges against him were dropped. Even if Prewitt qualified as a hostile witness, trial court's error of barring appellant from cross-examining Prewitt was harmless error because appellant has failed to demonstrate any prejudice to his case. Therefore, we find appellant's third assignment of error not well-taken.
In his fourth assignment of error, appellant argues that the trial court erred when it refused to instruct the jury that it could not infer anything from the fact that Alexander was not called as a witness since he was unavailable as a witness for either party.
The trial has the discretion to determine the final jury instructions to be given the jury and, therefore, its decision should not be overturned on appeal unless it constitutes an abuse of discretion. State v. Frost (1984), 14 Ohio App.3d 320,322. An "abuse of discretion" requires a showing of more than an error of law or judgment; the court's decision must be unreasonable, arbitrary, or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157-158.
The court may exclude a witness called by the defense if that witness is being called solely for the purpose of having that witness invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury. State v. Kirk
(1995), 72 Ohio St.3d 564, paragraph one of the syllabus, certiorari denied (1996), 516 U.S. 1097. However, under such circumstances, the defense is entitled to request an instruction that the jury should draw no inference from the absence of the witness because the witness was not available.Id. at paragraph two of the syllabus.
Appellee argues that the rule enunciated in State v. Kirk,supra, is not applicable in this case for two reasons. First it argues that this case is distinguishable because appellant was calling Alexander as a hostile witness. We find that this distinction is not significant. Even if a witness is only cross-examined, he can give testimony which could be beneficial to the defense.
Second, appellee argues that this case is distinguishable because Alexander was available as a witness for the prosection since it merely chose not to compel him to testify pursuant to their prior agreement. While the prosecution had not offered Alexander immunity in exchange for his testimony, the police had made a deal with Alexander to arrange to have the charges against him dismissed and help him with his probation violation if he cooperated with their investigation and testified. However, there was nothing to prevent Alexander from asserting his Fifth Amendment privilege against self-incrimination at trial. Since the prosecution was unwilling to extend him immunity, he was for all practical purposes, also unavailable to the prosecution as a witness. Cf. Lee v. Illinois (1986),476 U.S. 530, 550-551, Blackmun, J., dissenting, reversed on other grounds in Bourjaily v. United States (1987),483 U.S. 171, 182 (invoking the Fifth Amendment privilege against self-incrimination makes a witness unavailable for purpose of the Confrontation Clause even where the state could offer the witness immunity in exchange for his testimony).
Therefore, we agree with appellant that he was entitled to the requested instruction. However, appellant failed to object to the final jury instructions. Generally, the failure to make such a objection before the jury retires to consider its verdict bars the party from claiming the omission or inclusion of a certain instruction as error on appeal. Crim.R. 30(A). Thus, appellant has waived all but plain error in this case. Plain errors which affect substantial rights may be noticed even though they were not brought to the attention of the trial court. Crim.R. 52(B). To meet that standard of plain error, appellant must demonstrate that it is clear from the face of the record that if this error had not occurred, he would not have been convicted, and that it would constitute a miscarriage of justice to overlook this error. State v. Underwood (1983),3 Ohio St.3d 12, syllabus.
We conclude that the error in this case was harmless error because even though the jury found that appellant did not fire a gun that evening nor aid Alexander to conceal a gun, he nonetheless did aid Alexander to assault the victims with his weapon. Thus, it is clear that the jury did not make any negative inference from the fact that Alexander did not testify for the defense nor the prosecution.
Accordingly, we find appellant's fourth assignment of error not well-taken.
In his fifth assignment of error, appellant argues that the trial court erred by not granting his motion for a new trial or, in the alternative, dismissing the conviction as a matter of law based upon the jury's inconsistent verdict.
The jury found appellant guilty of complicity to commit felonious assault but that he was not carrying a firearm at the time. Appellant did not move for a new trial on the ground that the verdicts were inconsistent. Rather, he moved for a new trial on the basis that the trial court abused its discretion by failing to instruct the jury on the unavailability of Alexander as a witness.
For a verdict to be inconsistent there must be inconsistent responses to the same count, not inconsistent responses to different counts of a multiple count indictment. State v.Lovejoy (1997), 79 Ohio St.3d 440, paragraph one of the syllabus; Browning v. State (1929), 120 Ohio St. 62, paragraph four of the syllabus; State v. Adams (1978), 53 Ohio St.2d 223, vacated on other grounds (1978), 439 U.S. 811, paragraph two of the syllabus; and State v. Hicks (1989), 43 Ohio St.3d 72, 78, certiorari denied (1990), 494 U.S. 1038. Furthermore, the finding of guilt as to the principal charge is not affected by the finding of guilt as to the specification since "[s]pecifications are considered after, and in addition to, the finding of guilt on the principal charge." State v Perryman
(1976), 49 Ohio St.2d 14, 26, vacated, in part, on other grounds (1978), 438 U.S. 911.
Appellant was indicted on three counts of felonious assault and one count of carrying a concealed weapon. The elements of the crime of felonious assault are knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance, identified in this case as a gun. R.C. 2903.11(A)(2). He was convicted of complicity, knowingly aiding or abetting Alexander in the commission of felonious assault. R.C. 2923.03(A)(2) He was acquitted of the charge of complicity to carry a concealed weapon. Furthermore, the jury found that he did not have a firearm on or about his person or under his control while committing the offense of complicity.
Each count of the indictment is separate and, therefore, an acquittal as to count four is not inconsistent with a finding of guilt as to the other counts. The fact that the jury did not believe that appellant was aiding and abetting Alexander's concealment of a gun is not inconsistent with a finding that appellant aided and abetted Alexander's use of a gun to assault the victims. The jury could have believed that appellant knew that Alexander had a gun that evening, but that neither of them attempted to conceal the gun. Therefore, we conclude that appellant's fifth assignment of error is not well-taken.
In his sixth assignment of error, appellant argues that the trial court erred as a matter of law by making appellant's sentences on each count run consecutively.
Appellee first argues that appellant cannot raise this alleged error because he did not receive the maximum sentence possible. Appellee's argument has no merit. While appellant did not receive the maximum sentence for each felony violation, the sentences were ordered to be served consecutively and the total time to be served would exceed the maximum prison term for felonious assault. Therefore, under R.C. 2953.08(C) appellant has a right to seek leave to appeal his sentence. Furthermore, App. R. 5(C)(2) provides that since appellant filed a timely notice of appeal under App. R. 4, he may elect to incorporate in his initial appellate brief an assignment of error pursuant to R.C. 2953.08(C), which shall serve as a timely motion for leave to appeal required under R.C. 2953.08(C). Since appellant has complied with these requirements, we hereby grant him leave to appeal this issue and will consider the merits of this assignment of error.
R.C. 2953.08(G)(1) provides that:
 "The court hearing an appeal of a sentence under division (A) or (B) (1) or (2) of this section may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds any of the following:
 "(a) That the record does not support the sentence;
"* * *;
 "(d) That the sentence is otherwise contrary to law." (Emphasis added)
However, this appeal was brought pursuant to R.C. 2953.08(C). There is no statutory provision outlining the appellate court's power to modify or vacate the sentenced imposed under R.C.2953.08(C). Therefore, we look to App. R. 12, which gives us the general power to affirm, modify, or reverse the judgment appealed. Cf. State v. Mirmohamed (Dec. 3, 1998), Franklin App. No. 97APA11-1492, unreported and State v. Fitzmorris (Dec. 1, 1998), Franklin App. No. 98AP-340, unreported (which apply R.C2953.08(G) to this type of appeal).
Pursuant to former R.C. 2929.14(E)(3), effective January 1, 1997, the trial court may require multiple sentence to be served consecutively if:
 "* * * the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender, that the seriousness of the offenses requires consecutive service, or that the danger posed to the public by the offender is great unless consecutive service is required, and if the court also finds any of the following:
 "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18
of the Revised Code, or was under post-release control for a prior offense.
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
Appellant argues that the trial court did not comply with R.C. 2929.14(E)(3) because it did not make a specific finding that consecutive sentences were necessary to protect the public from future crime or that a greater punishment was appropriate for this appellant. Second, appellant argues that the trial court did not indicate why this sentence was proportionate to the danger appellant posed to the public.
In its judgment entry sentencing appellant, the court indicated that it considered the principles of sentencing and balanced the seriousness and recidivism factors set forth in the Ohio Revised Code. However, the court did not make any specific findings required by R.C. 2929.14(E)(3). At the sentencing hearing held on September 15, 1997, the trial court noted that appellant had a terrible juvenile record and, as an adult not yet nineteen years of age already had been convicted of some minor offenses and had some other more serious charges pending against him. The court also noted that appellant has a child to support, but had a poor work history. The court then sentenced appellant to serve six years for each complicity to commit felonious assault count.
While the court need not specifically quote each section of the statute and give the facts which support a finding that the statutory requirements have been met, the record must contain a recitation of such information in order for an appellate court to find that the trial court complied with the statutory sentencing requirements. State v. Mirmohamed, supra. It is insufficient that that record would support the court's findings. The court must actually make the findings required by statute. State v. Fitzmorris, supra and State v. Holsinger
(Nov. 20, 1998), Pike App. No. 97CA605, unreported. These findings may be made orally at the sentencing hearing, but preferably within the sentencing judgment entry itself. Supra,Fitzmorris. Cf. State v. Detweiler (Sept. 14, 1998), Stark App. No. 1998CA00054, unreported (which held that even if the record is silent, the sentencing court is presumed to have considered the mitigating factors of the Revised Code if the sentence imposed is within statutorily permitted limits based upon the holding in State v. Adams (1988), 37 Ohio St.3d 295).
In this case, the trial court did not make the necessary factual findings to support the imposition of consecutive sentences. Appellant's sixth assignment of error is well-taken.
Having found that the trial court did commit error prejudicial to appellant with respect to his sentence, the judgment of the Erie County Court of Common Pleas is affirmed in part and reversed in part. The judgment sentencing appellant is vacated and this case is remanded to the lower court for resentencing in accordance with this opinion. Pursuant to App. R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J. ---------------------------- JUDGE Melvin L. Resnick, J. ----------------------------- JUDGE Richard W. Knepper, J. CONCUR. ----------------------------- JUDGE