[Cite as *State v. DiBiase*, 2018-Ohio-2250.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO.  2017-L-027** |
| THOMAS C. DIBIASE, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2011 CR 000036.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Thomas C. DiBiase,* pro se, PID: A594-063, Warren Correctional Institution, 5787 State Route 63, Lebanon, OH  45036 (Defendant-Appellant).


COLLEEN MARY O'TOOLE, J.

{¶1}    Thomas C. DiBiase appeals from the judgment of the Lake County Court of Common Pleas denying his petition for postconviction relief without hearing.  Mr. DiBiase contends he is actually innocent; that his trial counsel was ineffective; that his convictions are based on insufficient evidence, and are against the manifest weight of the evidence; and that his trial was tainted by prosecutorial misconduct.  Finding no error, we affirm.

{¶2} In 2011, Mr. DiBiase was convicted in the trial court on two counts of burglary, two counts of receiving stolen property, and two counts of engaging in a pattern of corrupt activity, and sentenced to 19 years imprisonment. *State v. DiBiase*, 11th Dist. Lake No. 2011-L-124, 2012-Ohio-6125, ¶1, 29. The convictions stemmed from his involvement in a burglary ring operating in Lake and Geauga Counties, Ohio. *Id.* at ¶1. Mr. DiBiase appealed, and this court affirmed. *Id.* at ¶43. The Supreme Court of Ohio declined a discretionary appeal. *State v. DiBiase*, 135 Ohio St.3d 1415, 2013-Ohio-1622.

{¶3} November 14, 2016, Mr. DiBiase filed his petition for postconviction relief. The state opposed. The trial court denied the petition without hearing by a judgment entry filed January 23, 2017. Mr. DiBiase timely noticed this appeal, assigning two errors.

{¶4} "[T]he postconviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. *State v. Steffen* (1994), 70 Ohio St.3d 399. It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. Clearly then, a petition for postconviction relief does not provide a petitioner a second opportunity to litigate his or her conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. *State v. Jackson* (1980), 64 Ohio St.2d 107.

{¶5} "To warrant a hearing, a petitioner must first provide evidence which demonstrates a cognizable claim of constitutional error. R.C. 2953.21(C). That evidence must show that the denial or infringement of the petitioner's rights renders the petitioner's conviction and sentence void, or voidable, under the Ohio and/or United States Constitutions. *State v. Perry* (1967), 10 Ohio St.2d 175. If the petitioner fails to submit

evidentiary materials which facially demonstrate such an error, the court may deny the petition without a hearing. *Jackson, supra.*

{¶6} "Further, the doctrine of *res judicata* requires that the evidence presented in support of the petition come from outside, or 'dehors,' the record. In *State v. Cole* (1982), 2 Ohio St.3d 112, the Ohio Supreme Court explained: 'Under the doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment.' (*Id.* at 113, quoting *State v. Perry,* paragraph nine of the syllabus.)" *State v. Murphy*, 10th Dist. Franklin No. 00AP-233, 2000 WL 1877526, *2 (Dec. 26, 2000).

{¶7} An appellate court reviews a trial court's grant or denial of a petition for postconviction relief for abuse of discretion. *State v. Lesure*, 11th Dist. Lake No. 2006-L-139, 2007-Ohio-4381, ¶10. Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

{¶8} Before discussing Mr. DiBiase's assignments of error, we note that the petition was untimely, and the trial court could have rejected it on that basis alone. Generally, a petition for postconviction relief must be filed "no later than one hundred

3

eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction." R.C. 2953.21(A)(2). The record in the direct appeal of this case was filed April 4, 2012 – more than four years before Mr. DiBiase filed his petition.

{¶9} The 180 day time limit set forth at R.C. 2953.21(A)(2) may be avoided in limited circumstances. R.C. 2953.23(A)(1) provides that a longer period is available when the petitioner can establish both of the following:

{¶10} "(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioners' situation, and the petition asserts a claim based on that right.

{¶11} "(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable fact finder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence."

{¶12} Mr. DiBiase cannot meet the requirements of R.C. 2953.23(A)(1)(a). He does not purport that the United States Supreme Court has recognized any new federal or state right applying to him. He argues that he has newly discovered evidence which he could not previously discover. Our analysis of his first assignment of error shows this is untrue.

4

{¶13} Mr. DiBiase's first assignment of error is: "The court erred in denying defendant's motion for post conviction relief as a result of counsel's ineffectiveness."

{¶14} Initially, Mr. DiBiase argues he is "actually innocent." [Sentence removed] However, the postconviction relief statute provides a definition of the term "actual innocence." R.C. 2953.21(A)(1)(b) provides:

{¶15} "As used in division (A)(1)(a) of this section, 'actual innocence' means that, had the results of the DNA testing conducted under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code been presented at trial, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the person's case as described in division (D) of section 2953.74 of the Revised Code, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted, or, if the person was sentenced to death, no reasonable factfinder would have found the petitioner guilty of the aggravating circumstance or circumstances the petitioner was found guilty of committing and that is or are the basis of that sentence of death."

{¶16} A general rule of statutory construction is that the inclusion of one thing implies the exclusion of another ("expression unius est exclusion alterius"). *State v. Kelley*, 3rd Auglaize Nos. 2-05-34 and 2-05-35, 2006-Ohio-605, ¶10. Since the General Assembly has already provided a definition of the term "actual innocence" in postconviction proceedings – and since Mr. DiBiase is not relying on DNA evidence – the concept does not apply in this case.

{¶17} The Ohio courts of appeals have rejected claims of actual innocence premised on newly discovered evidence as constituting a basis for relief in postconviction

5

proceedings. *See, e.g.*, *State v. Willis*, 6th Dist. Lucas Nos. L-15-1098 and L-15-1101, 2016-Ohio-335, ¶16-17 (collecting cases). However, the United States Supreme Court has recognized that claims of actual innocence may be used in an extremely restricted fashion in federal habeas corpus proceedings.

**{¶18}** Thus, in *Herrera v. Collins*, 506 U.S. 390 (1993), petitioner had been convicted of murder and sentenced to death in 1982. *Id.* at 393. Having exhausted his state remedies, petitioner filed successive habeas petitions in the federal courts. *Id.* In his second petition, he urged that he was actually innocent of the murder – that his late brother had committed the crime – and that this justified relief in habeas corpus. *Id.* Speaking for the court, Chief Justice Rehnquist held that petitioner was not entitled to habeas relief. *Id.* The chief justice explained that claims of actual innocence were not themselves claims of constitutional error, sufficient to support federal habeas relief, *id.* at 400-404, but merely "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 404.

**{¶19}** After noting that seeking a pardon from the relevant executive was the traditional method of asserting a claim of actual innocence based on new evidence, *Herrera* at 411-417, the chief justice then wrote:

**{¶20}** "We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim. But because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on

6

often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high. The showing made by petitioner in this case falls far short of any such threshold."

**{¶21}** The United States Supreme Court further considered the issue of actual innocence claims in federal habeas proceedings in *Schlup v. Delo*, 513 U.S. 298 (1995). Again, petitioner was on death row. *Id.* at 301. Speaking for the court, Justice Stevens wrote:

**{¶22}** "As a preliminary matter, it is important to explain the difference between Schlup's claim of actual innocence and the claim of actual innocence asserted in *Herrera v. Collins,* 506 U.S. 390, * * * (1993). In *Herrera,* the petitioner advanced his claim of innocence to support a novel substantive constitutional claim, namely, that the execution of an innocent person would violate the Eighth Amendment. Under petitioner's theory in *Herrera,* even if the proceedings that had resulted in his conviction and sentence were entirely fair and error free, his innocence would render his execution a 'constitutionally intolerable event.' *Id.* at 419, * * * (O'CONNOR, J., concurring).

**{¶23}** "Schlup's claim of innocence, on the other hand, is procedural, rather than substantive. His constitutional claims are based not on his innocence, but rather on his contention that the ineffectiveness of his counsel, see *Strickland v. Washington,* 466 U.S. 668, * * * (1984), and the withholding of evidence by the prosecution, see *Brady v. Maryland,* 373 U.S. 83, * * * (1963), denied him the full panoply of protections afforded to criminal defendants by the Constitution. Schlup, however, faces procedural obstacles that he must overcome before a federal court may address the merits of those constitutional claims. Because Schlup has been unable to establish 'cause and prejudice'

7

sufficient to excuse his failure to present his evidence in support of his first federal petition, see *McCleskey v. Zant,* 499 U.S. 467, 493–494, * * * (1991), Schlup may obtain review of his constitutional claims only if he falls within the 'narrow class of cases ( * * *) implicating a fundamental miscarriage of justice,' *id.,* at 494, * * *.  Schlup's claim of innocence is offered only to bring him within this 'narrow class of cases.'" (Footnotes omitted.)  (Parallel citations omitted.)   *Schlup* at 313-315.

{¶24}  Thus, even if we thought the rules set forth in *Herrera* and *Schlup* could be imported from federal habeas jurisprudence into Ohio postconviction proceedings, Mr. DiBiase would not benefit, since his convictions do not rise to the level of seriousness required by those cases.

{¶25}  In fact, Mr. DiBiase asserts not a claim based on actual innocence, but that he has a right to relief based on newly-discovered evidence, which he could not present at trial.  Attached to Mr. DiBiase's petition was the affidavit of Dale McNaughton, Mr. DiBiase's partner in the burglary ring.  In it, Mr. McNaughton averred Mr. DiBiase had not participated in the crimes for which he was convicted.  Mr. DiBiase argues that Mr. McNaughton was ready to testify to this effect at trial, and his trial counsel was ineffective for failing to put him on the stand.

{¶26}  The record does not support these contentions.  Mr. DiBiase's trial counsel subpoenaed Mr. McNaughton, who was in prison, having already been convicted in Lake County.  There was a lengthy discussion on the record before the trial court.  Mr. McNaughton was included, and was represented by counsel.  He assured the trial court he was ready to testify as to Mr. DiBiase's innocence – until the trial court warned him he would be waiving his Fifth Amendment rights if he did testify.  There was an ongoing

8

investigation of the burglary ring in Geauga County, and Mr. McNaughton expected to be indicted. Once the trial court explained that his testimony could be used against him thereafter, Mr. McNaughton chose not to testify. A trial court may exclude a witness, if all the witness intends to do is assert his or her Fifth Amendment rights. *State v. Kirk*, 72 Ohio St.3d 564 (1995), paragraph one of the syllabus.

{¶27} Mr. DiBiase's trial counsel did proffer regarding the nature of Mr. McNaughton's expected testimony. He was not ineffective. Further, this issue could, and should, have been raised on Mr. DiBiase's direct appeal. It was not, and is barred by res judicata. *Perry*, *supra*, at paragraph nine of the syllabus.

{¶28} Under his first assignment of error, Mr. DiBiase also challenges the sufficiency of the evidence used to convict him, and its manifest weight. These were the basis of his direct appeal, and were rejected then. *DiBiase*, 2012-Ohio-6125, at ¶1, 43. Mr. DiBiase cannot raise them again by way of postconviction relief.

{¶29} The first assignment of error lacks merit.

{¶30} Mr. DiBiase's second assignment of error is: "Prosecutorial misconduct." Mr. DiBiase alleges that a Lake County assistant prosecutor browbeat Mr. McNaughton into not testifying for Mr. DiBiase, by threatening him with a longer sentence if he did.

{¶31} The record does not support this contention. As noted above, Mr. McNaughton had already been convicted and sentenced for his Lake County crimes: no assistant prosecutor from that county had any reason to threaten him with an unfavorable sentencing recommendation. In his affidavit attached to the petition for postconviction relief, Mr. McNaughton did aver such a threat, but that he was told of it by his Lake County public defender, and that it came from either the Geauga County Prosecutor, or by way

9

of warning from the Geauga County public defender. Further, it is very clear from the trial transcript that Mr. McNaughton chose not to testify due to fear of waiving his Fifth Amendment rights.

{¶32} The second assignment of error lacks merit.

{¶33} The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, P.J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.