JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Richard Jenkins ("defendant") appeals from the judgment of the trial court finding him guilty of theft. For the reasons set forth below, we affirm.
 {¶ 2} In January of 2004, defendant was indicted on one count of theft in violation of R.C. 2913.02. He pled not guilty to the indictment and the matter proceeded to a jury trial.
 {¶ 3} The evidence presented at trial demonstrated that defendant's company, Distinctive Detail and Imperial Parking garage entered into an agreement in which defendant would repair rust and calcium spotted cars that were damaged by Imperial Parking garage's facility. Specifically, Imperial Parking paid defendant $250 to repair as many cars as he could in one or two days per week, every other week. Defendant worked on Deborah McGraw's van sometime in early October. Ms. McGraw was not satisfied with defendant's work, because some of the rust and calcium deposits were still on the van. In addition, defendant had damaged the interior of the van, leaving a discolored spot on the floor, which defendant agreed to fix at a later date.
 {¶ 4} On October 28, 2003, defendant approached Ms. McGraw as she entered the parking garage for the day. He agreed to finish removing the calcium and rust spots, and to fix the damaged interior. Ms. McGraw left her keys with defendant and when she returned at the end of the day, her van was missing from the garage. It was returned the next day but it had extensive damage. According to Ms. McGraw and the general manager for Imperial Parking, the defendant knew he did not have consent to remove the vehicle from the garage.
 {¶ 5} Defendant claimed he removed from the garage Ms. McGraw's van to take care of the rust deposits and repair the interior.[1] He said he was shocked by the condition of the interior; it was so riddled with trash and miscellany, that he had to spend an inordinate amount of time just removing the items from the van. He then proceeded to clean the interior by vacuuming, shampooing, and extracting. He claimed to have worked on the vehicle into the early hours of October 29, 2003. He slept for a couple of hours, then woke up to finish cleaning the van. According to defendant, when Imperial Parking's general manager eventually contacted him about the van that morning, he returned it as soon as he was able, around 10:00 a.m. on October 29, 2003.
 {¶ 6} Defendant was thereafter convicted of theft and sentenced accordingly. He appeals his conviction and sentence, submitting six assignments of error for our review.
 I. {¶ 7} In his first assignment of error, defendant maintains there was insufficient evidence to support a theft conviction.
 {¶ 8} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52.
 {¶ 9} R.C. 2913.02 provides, in relevant part:
 {¶ 10} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 11} "(1) Without the consent of the owner or person authorized to give consent."
 {¶ 12} In this case, the state's evidence demonstrated that on October 28, 2003, defendant flagged down Ms. McGraw to let her know he could fix her van that day. Ms. McGraw left her keys with defendant and then went to work. At approximately noon, she received a voicemail from defendant stating they were backed up, but they would finish her van by the time she was finished with work for the day. At about 5:20 that evening, Ms. McGraw went to the garage to retrieve her van and found it was gone and no one knew where it was located. She and the Imperial Parking staff attempted to locate defendant and the van for hours. They eventually contacted the police to report the van stolen. At approximately 9:00, Ms. McGraw went home. The following day at approximately noon, Ms. McGraw was informed that her van was returned. She went to Imperial Parking and noticed the van was returned with extensive damage to it, including: a dented bumper, cracked taillight, an extremely loud noise in the engine, major steering problems, a filthy interior, and the ashtray filled with cigarettes.[2] She stated the van is still being repaired.
 {¶ 13} Ethan Spiegelberg, the General Manager of Imperial Parking, testified that his business relationship with defendant was "on the way out" because there had been an incident the week prior in which defendant did not return a customer's car until after 7 p.m. Following that incident, defendant was told that under no circumstances were any vehicles to be removed from the parking garage. Instead, defendant was to work on the vehicles in a specified area within the Imperial Parking garage.
 {¶ 14} Mr. Spiegelberg attempted to contact defendant approximately seven times on October 28, 2003 to retrieve Ms. McGraw's van, but was unsuccessful. He also sent defendant an email describing the incident and asking him to contact the garage or the police. Donald Toth, the district manager for Imperial Parking testified that on October 23, 2003, defendant did not bring a customer's car back until after 7:30 p.m. It was at that time that he informed defendant that no vehicles were to be removed from the parking garage. Mr. Toth confirmed Ms. McGraw's testimony regarding the poor condition of the van when the vehicle was returned.
 {¶ 15} Defendant stated that it was sometimes necessary to transfer cars between the various locations with which he had contracts. He claimed that he was shocked by the condition of the interior of McGraw's van. He characterized it as littered with garbage and miscellany, such as kitty litter, balloons, coats, shoes, and cell phones.[3] He claimed that it took approximately five and a half hours just remove the items. At one point in his testimony, however, defendant acknowledged the van was in mint shape when Ms. McGraw left it with him (T. 150).
 {¶ 16} Defendant further testified that the water line at the parking garage had been severed, the water was not usable, and there was no electricity in the garage that day.[4] Defendant and his co-worker, Konshawnt Triplett decided to make alternative arrangements to complete the van. Defendant claimed he had to take the van to another garage to use the dryer and extractors. He notified Spiegelberg by sending numerous emails and by making between 10 and 15 phone calls to him. According to defendant, when Ethan finally called defendant at 8:30 a.m. the next day, defendant quickly put the van back together and returned it by 10:00 a.m., then left. Defendant stated the van already had dent in the bumper, like someone put a high heel through it.
 {¶ 17} Konshawnt Triplett testified that he was with defendant throughout the entire episode. Konshawnt testified that when they received the van, it was in good condition and there was no trash in or about the interior of the van. Konshawnt also denied ever cleaning the interior of the van by vacuuming, washing, shampooing or extracting. Instead, he stated they were just charged with changing the seats of the van. He refuted another portion of defendant's testimony regarding transferring the car to another Imperial Parking facility to complete the cleaning.
 {¶ 18} A review of the testimony presented in this case reveals that there was sufficient evidence to find defendant guilty. In viewing the foregoing evidence and reasonable inferences in a light most favorable to the prosecution as we must, we find that any rational trier of fact could have found that defendant knowingly, with purpose to deprive Ms. McGraw, obtained or exerted control of her automobile beyond the scope of her initial consent. We therefore find no merit to this assignment of error.
 II. {¶ 19} Defendant alleges the trial court committed plain error by failing to instruct the jury on the lesser included offense of "unauthorized use of a motor vehicle." We note initially the defendant failed to raise this issue before the trial court and has therefore waived all but plain error.
 {¶ 20} Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. State v. Moreland (1990), 50 Ohio St.3d 58, 62,State v. Phillips, 74 Ohio St. 3d 72, 83, 1995-Ohio-171.
 {¶ 21} Regarding the inclusion of jury instructions on a lesser included offense, the Ohio Supreme Court has stated, "* * * merely because one offense can be a lesser included offense of another does not mean that a court must always instruct on both offenses where the greater offense is charged. However, such an instruction is required where the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense." State v.Davis (1983), 6 Ohio St.3d 91, 6 Ohio B. 131, 451 N.E.2d 772 (Internal quotation omitted.)
 {¶ 22} Unauthorized use of a motor vehicle is a lesser included offense of grand theft of a motor vehicle. State v. Young, Cuyahoga App. No. 79243, 2002-Ohio-2744 citing State v. Smead (Feb. 7, 1989), Montgomery App. No. 10922; State v. Fisher (May 28, 1987), Cuyahoga App. No. 52182. Generally, however, when a defendant presents a complete defense, an instruction on a lesser included offense is improper; Statev. Solomon (1981), 66 Ohio St.2d 214, 421 N.E.2d 139, paragraph two of the syllabus.
 {¶ 23} In order to convict defendant of theft, the state had to prove beyond a reasonable doubt that defendant, with purpose to deprive the owner of the property, knowingly obtained or exerted control over the property without the consent of the owner or person authorized to give consent. "Deprive" is defined in R.C. 2913.01(C) and includes withholding for a period as to appropriate a substantial portion of its value or use. As noted in the 1974 comment section to this statute, "the deprivation need not, strictly speaking, be permanent. * * * The definition of `deprive' in this section is also broadened to include a temporary deprivation of property resulting in some substantial loss to the owner." In order to convict a person of the unauthorized use of a motor vehicle, the state must prove that the person knowingly used or operated a motor vehicle without the consent of the owner or the person authorized to give consent. R.C. 2913.03(A). In this case, the state demonstrated that McGraw gave defendant consent to remove the rust and calcium deposits from the van, and that the van was otherwise in good condition. The state also demonstrated that water and electricity were available to defendant in the garage and that under no circumstances was defendant to remove any vehicles from the parking garage. It is undisputed that defendant removed the vehicle from the garage and that it was returned in deplorable condition. The state also presented compelling evidence that defendant did not respond to any of the numerous efforts to contact him. From the foregoing, the evidence demonstrated that defendant intended to deprive the owner of the van for a period resulting in substantial loss to her. Under no reasonable view of the evidence is it possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense. Therefore, an instruction on lesser included offense was not appropriate for unauthorized use of a motor vehicle. Accord State v. Robb (2000),88 Ohio St.3d 59. We find no merit to this assignment of error.
 III. {¶ 24} In his third assignment of error, the defendant alleges the prosecutor committed misconduct by repeatedly asking the defendant to assess the truthfulness of other witnesses.
 {¶ 25} On cross-examination of defendant, in attempting to ascertain the details of the evening when defendant left the garage with Ms. McGraw's van, the prosecutor asked questions of defendant, such as "If Ethan were to say, no, you were not scheduled to work on the 28,th that he was terminating the future relationship between Imperial and you on the 28,th Ethan would be lying?" Defendant cites six other such instances of alleged misconduct.
 {¶ 26} We note that defendant's counsel did not object to the prosecutor's questions. Accordingly, we review them for plain error.
 {¶ 27} Cross-examination is "permitted on all relevant matters and matters affecting credibility." State v. Slagle (1992), 65 Ohio St.3d 597; Evid.R. 611 (B). Generally, referring to or alluding to a defendant as a liar is improper when there is no evidence to support such an accusation. State v. Franklin, 97 Ohio St.3d, 2002-Ohio-5304. Furthermore, the scope of cross-examination lies within the sound discretion of the trial court. Slagle, supra. citing State v. Acre
(1983), 6 Ohio St.3d 140.
 {¶ 28} In this matter, we find the questions posed by the prosecutor were not improper and find no merit to this assignment of error. The questions do not suggest that defendant lied. The transcript is clear that the prosecution was identifying points at which the state's evidence conflicted with defendant's claims. As such, it was proper cross-examination. We find no abuse of discretion and no plain error.
 IV. {¶ 29} Defendant claims the trial court improperly admitted victim-impact statements to the jury and, as a result, he was denied his Sixth Amendment right to a fair trial.
 {¶ 30} Defendant asserts there were two improper instances of allowing victim impact evidence. We note, however, that defense counsel failed to object, however, and waived all but plain error. State v. Tibbetts
(2001), 92 Ohio St.3d 146, 160-161, 2001-Ohio-132.
 {¶ 31} While testifying, Ms. McGraw detailed the damage to her van and stated that her van was still at the dealership being fixed. The prosecutor then asked if she had been compensated in any way for the damage to the vehicle, to which she replied no, and then briefly described how hard it had been on her and her husband to be without the van. We find this response does not rise to the level of plain error. Ms. McGraw's testimony was not overly emotional and it cannot be said that the outcome of the trial would have been otherwise, but for this short statement from Ms. McGraw, in light of the overwhelming evidence against defendant. See State v. Cunningham, 2004-Ohio-7007, citing Statev. Hartman (2001), 93 Ohio St.3d 274 and State v. Reynolds (1998),80 Ohio St.3d 670, 679.
 {¶ 32} Defendant next complains the prosecutor in his closing argument improperly referenced victim-impact evidence by stating "She said she had to pick her grandbaby, call her husband, waited for hours at a parking garage downtown." We disagree.
 {¶ 33} Prosecutors are granted wide latitude in closing arguments.State v. Maurer (1984), 15 Ohio St.3d 239, 269, cert. denied (1985),472 U.S. 1012. In order for a prosecutor's closing argument to be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice." State v. Williams
(1986), 23 Ohio St.3d 16, 20, cert. denied (1987), 480 U.S. 923.
 {¶ 34} In this case, the offense concerned Ms. McGraw being deprived of her van. She testified that she was in a hurry to get her van from the parking garage because she had to pick up her grandbaby. Furthermore, several witnesses testified regarding Ms. McGraw waiting for defendant to return to the garage with the van. The prosecuting attorney's statement was a proper comment on the evidence and was relevant to the offense.
 {¶ 35} We find no merit to this assignment of error and overrule it.
 V. {¶ 36} Defendant avers he was denied effective assistance of counsel as a result of trial counsel's failure to object to the prosecutor's alleged misconduct and the trial court's alleged error in introducing the victim-impact statement.
 {¶ 37} In order to demonstrate ineffective assistance of counsel, the defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. See Strickland v. Washington
(1984), 466 U.S. 668, 687; State v. Noling, 98 Ohio St.3d 44, 65,2002-Ohio-7044; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 38} Because we have rejected the claims of error which are the basis for defendant's claim that his trial counsel was ineffective, we likewise reject the assertion of ineffective assistance of counsel which is premised upon those alleged errors. State v. Henderson (1988),39 Ohio St.3d 24, 33, 528 N.E.2d 1237. We therefore overrule this assignment of error.
 VI. {¶ 39} In his final assignment of error, defendant contends his sentence is unconstitutional in the wake of the United States Supreme Court's holding in Blakely v. Washington (2004), 124 S.Ct. 2531. Defendant was sentenced to the maximum term of eighteen months incarceration for the theft, to run consecutively to a nine-month term of incarceration for case number 449627.
 {¶ 40} In State v. Lett (May 31, 2005), Cuyahoga App. Nos. 84707 and 84729, en banc, this court held that the imposition of maximum and consecutive sentences does not implicate the Sixth Amendment and are not prohibited under the United States Supreme Court's decision in Blakely v.Washington (2004), ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed2d 403. Accordingly, this assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common PLeas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., and McMonagle, J., Concur.
[1] Later in his testimony, defendant maintained he did not see any rust or calcium deposits on Ms. McGraw's van that day.
[2] Ms. McGraw testified that she does not smoke.
[3] Ms. McGraw testified that she did not own a cat.
[4] However, Ethan testified the electricity and water were, in fact, in working order that day.