JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Kenneth Owens appeals from his convictions on vehicular assault, failure to comply, drug trafficking, and possession of criminal tools. Of his nine assignments of error, he most strenuously argues that the court erred by denying his motion to suppress and admitting his videotaped statement into evidence, that the state failed to prove the elements of a furthermore clause, that it erroneously admitted victim impact evidence, and that it erred by summarily denying his request for new counsel. We find structural error relating to the state's failure to prove the mental element of the offense listed in a furthermore clause, and reverse the conviction on the vehicular assault charge. We find no merit in the remaining assignments of error.
 {¶ 2} Owens makes a very narrow factual challenge to the evidence supporting his conviction, so we state the facts in summary form, with a more complete rendition of the facts as necessary within the applicable assignment of error. A police officer stopped a car driven by Owens with the intention of issuing a speeding citation. When the officer approached the driver's window, he noticed a very strong odor of cologne within the car. The officer suspected that the cologne had been used to mask the smell of alcohol or drugs, so he asked Owens if he could search the car. Owens became nervous and told the officer there was no need to conduct a search. Another police car arrived to assist with *Page 4 
the stop, so the officer told Owens to shut off his car while he returned to his vehicle to call for a K-9 unit. Owens then started his car and drove off. The second police car pursued Owens with lights and sirens activated. Owens quickly accelerated to a speed in excess of 60 miles per hour in a 35 mile per hour zone. He drove through a red light and struck another car that had been in the intersection, seriously injuring its driver. Owens exited his car and tried to escape on foot, but was apprehended when he tried to enter a nearby apartment building. When the police later searched his car, they found a large plastic bag containing 15 smaller plastic bags with uniform quantities of marijuana. They also found a box of small plastic bags in the car.
 I {¶ 3} Owens first argues that the court erred by denying his motion to suppress statements made in a videotaped statement because those statements were obtained without proof that he knowingly, intelligently and voluntarily executed a waiver of his Fifth Amendment right to silence. He claims that despite telling the police that he would not sign a waiver of his rights, the police continued to question him and secretly videotaped his responses, eliciting incriminating statements that the court allowed into evidence at trial.
 {¶ 4} In Miranda v. Arizona (1966), 384 U.S. 436, 479, the United States Supreme Court held that any statements made during the course of a custodial *Page 5 
interrogation are inadmissible at trial unless the accused is informed of the right to consult with an attorney before and during questioning and of the right against self-incrimination prior to questioning by police. The accused must have not only understood these rights, but voluntarily waived them. Although Miranda rights must first be waived as a predicate to the admission of statements by the accused, the waiver need not be in the form of an explicit statement. They can be inferred from the words and actions of the accused on a case-by-case basis.North Carolina v. Butler (1979), 441 U.S. 369, 375; State v. Scott
(1980), 61 Ohio St.2d 155, paragraph one of the syllabus.
 {¶ 5} The day after his arrest, a police detective brought Owens into an interrogation room. Unbeknownst to Owens, this interview was videotaped.[1] The detective presented Owens with a document that contained two parts. The first was titled "YOUR RIGHTS" and the second was titled "WAIVER OF RIGHTS." The first part contained the standardMiranda warnings. Owens acknowledged being read his rights by signing below this part. The second part contained a waiver of theMiranda rights. Owens said that he did not want to sign this section, asking "what is there to talk about?" The detective wrote "REFUSED" on the signature line. The detective then told Owens that he needed some personal information from Owens and that, when the information *Page 6 
had been produced, Owens would be permitted for the first time to make telephone calls to an attorney or other persons if he so desired.
 {¶ 6} The detective began by asking background questions of a kind normally permitted during "booking" procedures. See Pennsylvania v.Muniz (1990), 496 U.S. 582 (allowing questions regarding the defendant's name, address, height, weight, eye color, date of birth, and current age). Owens then questioned why a K-9 unit had been ordered for an ordinary traffic stop and said that the police lacked "probable cause" to think that he had drugs. The detective explained that the police did not need probable cause to call in the K-9 unit, but only a suspicion that drugs were involved. He said they had been trained to recognize the odor of cologne in a car as an "indicator" of drug use. Owens denied having used cologne to mask the odor of marijuana and said that he had just showered and been on his way to work. The detective wondered why Owens did not wait at the traffic stop, and Owens told him that he was late for work. The detective told Owens that "everything that you did as soon as you put that car in drive is all on you." Owens said that he took responsibility for his actions.
 {¶ 7} The conversation then turned to the separately-packaged bags of marijuana that were found in the car. Owens said that he bought the marijuana packaged that way. The detective questioned why Owens would have such a large quantity in the car and Owens admitted that "I might sell it sometimes." *Page 7 
He said that he fled from the stop because he thought he would be arrested for committing a felony, and that he would have remained at the stop had he known he would only be charged with a misdemeanor drug offense.
 {¶ 8} The totality of the circumstances convince us that Owens made his statements voluntarily. To be considered voluntary, a waiver of Miranda rights must be noncoercive: "A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Dailey (1990), 53 Ohio St.3d 88, at paragraph two of the syllabus; State v. Lather, 110 Ohio St.3d 270,2006-Ohio-4477, ¶ 8. Although the interview for "background" information was of dubious investigative necessity, [2] our review of the videotape shows no coercive police conduct that could be said to have overcome Owens' will or his capacity for self-determination. Owens initiated conversations about the substance of the case. The detective merely took advantage of these statements to steer the conversation and obtain the incriminating statements. The detective remained calm throughout the interview, and at no point could it be said that he acted in an overbearing manner or that he coerced Owens into making *Page 8 
statements. Owens may have talked more than he intended to, but he did so voluntarily, not as the result of coercion.
 II {¶ 9} Owens next complains that the state failed to produce sufficient evidence to sustain a "furthermore" clause attached to count 1 of the indictment which charged that in conjunction with vehicular assault, he violated R.C. 4549.02 by leaving the scene of an accident without giving his name, address and registration number to the driver of the car that he struck. Before considering the substance of this claimed error, we consider on our own initiative whether there is structural error in the court's failure to charge the jury on the mental element of the leaving the scene of an accident offense listed in the furthermore clause. We do so in conformity with State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, in which the supreme court held that an indictment that fails to state a mental element of an offense is defective, and that a defective indictment constitutes structural error that is not waived by a failure to raise the defect in the trial court. Id. at syllabus.
 {¶ 10} The state charged Owens with vehicular assault under R.C. 2903.08(A)(2)(b), alleging that while operating a motor vehicle he recklessly caused serious physical harm to another person. The state attached a furthermore clause to this count as permitted by R.C. 2903.08(C)(2), and alleged *Page 9 
that at the time of the offense, Owens violated R.C. 4549.02(A)(2) by leaving the scene of an accident. R.C. 4549.02(A) states:
 {¶ 11} "In case of accident to or collision with persons or property upon any of the public roads or highways, due to the driving or operation thereon of any motor vehicle, the person driving or operating the motor vehicle, having knowledge of the accident or collision, immediately shall stop the driver's or operator's motor vehicle at the scene of the accident or collision and shall remain at the scene of the accident or collision until the driver or operator has given the driver's or operator's name and address and, if the driver or operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to any person injured in the accident or collision or to the operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision, or to any police officer at the scene of the accident or collision."
 {¶ 12} If proven beyond a reasonable doubt, a violation of R.C. 4549.02(A) increases the degree of the vehicular assault offense from a fourth degree felony to a third degree felony. See R.C. 2903.08(C)(2).[3] Because leaving the scene of *Page 10 
an accident elevates the degree of the vehicular assault offense, it becomes an essential element of vehicular assault.[4] Cf. State v.Gordon (1971), 28 Ohio St.2d 45 (when a second offense under R.C. 4549.04(B) elevated that offense from a misdemeanor to a felony it transformed the crime by increasing its degree, so the prior conviction became an essential element of the crime). See, also, State v.Henderson (1979), 58 Ohio St.2d 171.
 {¶ 13} Unlike firearm or physical harm specifications which require findings as to the existence of certain prerequisite facts, the furthermore clause used in this case charged a completely separate criminal offense under R.C. 4549.02. The clause states: "FURTHERMORE, in the same course of conduct, the offender also violated section 4549.02
of the Revised Code." (Emphasis added.) By using the word "violated" with respect to the charge of leaving the scene of an accident, the indictment necessarily required that the state prove all the elements of that charge beyond a reasonable doubt, in addition to proving vehicular assault. Those elements are that Owens (1) operated a motor vehicle on a public road or highway; (2) was involved in an accident or collision with persons or property; (3) had knowledge of the accident or collision; (4) failed to immediately stop his motor vehicle at the scene of the accident or collision and *Page 11 
remain at the scene; and (5) failed to give his name and address and the registration number of his motor vehicle to any person injured in the collision or to any police officer at the scene of the collision.
 {¶ 14} "[T]he mental state of the offender is a part of every criminal offense in Ohio, except those that plainly impose strict liability."Colon, 118 Ohio St.3d at ¶ 11, citing State v. Lozier,101 Ohio St.3d 161, 2004-Ohio-732, ¶ 18. The use of the word "knowledge" in R.C. 4549.02(A) equates to a "knowingly" culpable mental element. State v.Gonzalez, Mahoning App. No. 06 MA 58, 2008-Ohio-2749, at ¶ 24. The state's failure to include this element in the furthermore clause of the indictment meant that it did not charge an essential element of the offense. Under Colon, this constitutes structural error.
 {¶ 15} Our conclusion is not in conflict with State v. Fairbanks,117 Ohio St.3d 543, 2008-Ohio-1470, because the furthermore clause used in this case does more than just call for a finding of fact that enhances the penalty for the offense. In Fairbanks, the supreme court considered "whether reckless operation of a vehicle, R.C. 4511.20, is a lesser included offense of failure to comply with an order or signal of a police officer, R.C. 2921.331(B), when the failure-to-comply charge is accompanied by a specification of causing a substantial risk of serious physical harm to persons or property pursuant to R.C. 2921.331(C)(5)(a)(ii)." Id. at ¶ 1. The supreme court held it was not, concluding that: *Page 12 
 {¶ 16} "In this case, R.C. 2921.331(C)(5)(a)(ii) is not an element that has a specified culpable mental state. Instead, the penalty enhancement is contingent upon a factual finding with respect to the result or consequence of the defendant's willful conduct. Whether the result or consequence was intended by the defendant is of no import. If the trier of fact finds beyond a reasonable doubt that a substantial risk of serious physical harm to persons or property actually resulted from defendant's conduct, then enhancement is established. This is purely a question of fact concerning the consequences flowing from defendant's failure to comply. It involves no issue of intent or culpability, and no inquiry into the defendant's state of mind with respect to that element is contemplated or necessary. It is analogous to determining whether the offense occurred in daylight or in darkness or whether the place where it occurred was dusty or wet. It is simply a finding of the presence or absence of a condition." Id. at ¶ 15.
 {¶ 17} Although the specification used in Fairbanks did elevate the degree of the offense, the supreme court held that it was merely a sentence enhancement because the crime charged in the specification did not have a culpable mental state. Id. at ¶ 11. Fact-finding relating to the specification "involves no issue of intent or culpability, and no inquiry into the defendant's state of mind with respect to that element is contemplated or necessary." Id. *Page 13 
 {¶ 18} Unlike the penalty-enhancement in Fairbanks, the furthermore clause used in this case elevated the degree of the offense upon a showing that a "violation" of R.C. 4549.02(A) occurred. R.C. 4549.02(A) contains a mental element, and therefore requires more than a mere finding into the presence or absence of a condition such as whether a firearm had been used or whether the offender caused serious physical harm during the commission of the offense. The failure to stop at the scene of an accident furthermore clause was at all events a separate charge for which all the elements of the charge, including the applicable mental element, had to be proven. We therefore find thatFairbanks is inapplicable to this case.
 {¶ 19} The consequences of charging the failure to stop offense in a furthermore clause rather than as a separate offense were very severe. Leaving the scene of an accident as charged in this case would ordinarily be a first degree misdemeanor. See R.C. 4549.02(B). First degree misdemeanors are punishable by not more than 180 days in jail. See R.C. 2929.24(A)(1). Assuming that the court intended to sentence Owens to a term of incarceration for the first degree misdemeanor, that term would have to be served concurrently with any time ordered on the attendant felony count of vehicular assault. See R.C. 2929.41(A);State v. Butts (1991), 58 Ohio St.3d 250, syllabus. *Page 14 
 {¶ 20} By listing the failure to stop at the scene of an accident in a furthermore clause rather than as a separate offense, the state was able to elevate the degree of vehicular assault from a fourth degree felony to a third degree felony, and hence elevate the possible penalities. While fourth degree felonies allow a maximum prison term of 18 months; third degree felonies allow a maximum prison term of five years. See R.C. 2929.14(A)(3) and (4). The court sentenced Owens to the maximum prison term of five years, or three and one-half years more than he could have received had the leaving the scene of an accident charge been listed as a separate misdemeanor offense. In other words, the furthermore clause used in this case allowed the court to sentence Owens to five years in prison for what should ordinarily be a combined maximum of 18 months. These consequences compel a rigorous application of the rule announced in Colon, and hence our finding that the state's failure to include a culpable mental element for the offense of leaving the scene of an accident as charged in the furthermore clause is structural error. We therefore sustain the second assignment of error. Our holding necessarily moots consideration of Owens' third assignment of error relating to the court's jury instructions on the furthermore clause. See App. R. 12(A)(2).
 {¶ 21} We overrule Owens' seventh assignment of error, relating to the fourth count of the indictment that charged him with possession of criminal *Page 15 
tools. Owens incorrectly asserts that "reckless" is the requisite mental element for the offense of possession of criminal tools. R.C. 2323.24(A) plainly states that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, withpurpose to use it criminally." (Emphasis added.) Hence "purposely," not "reckless," is the requisite culpable mental element for the offense of possession of criminal tools under R.C. 2323.24. See State v.Williams, Summit App. No. 23560, 2008-Ohio-1048, ¶ 19; State v.Cotton (July 14, 1994), Cuyahoga App. Nos. 64361 and 64378.
 {¶ 22} The indictment stated that Owens:
 {¶ 23} "[U]nlawfully possessed or had under his control a substance, device, instrument, or article, with purpose to use it criminally, to-wit: packaging materials and/or cologne, and such substance, device, instrument, or article was intended for use in the commission of a felony, in violation of R.C. 2323.24 of the Ohio Revised Code."
 {¶ 24} This count conformed in all respects to the law set forth inColon, so the fourth count of the indictment was not defective.
 III {¶ 25} Owens argues that the court abused its discretion by allowing the victim to testify to the pain and suffering she experienced as a result of being struck by Owens as he tried to flee from the police. He maintains that this *Page 16 
amounted to victim impact testimony and that its admission prejudiced the jury against him. Questions involving victim impact testimony center on issues of relevancy. Ordinarily, any evidence having "the tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence" is admissible. See Evid. R. 401. However, testimony as to how a defendant's criminal acts have affected the victims are usually irrelevant because they do not ordinarily purport to go to the guilt or innocence of the accused. Rather than proving any fact of consequence on the issue of guilt, victim impact testimony tends to inflame the passions of the jury and risk conviction on facts unrelated to actual guilt. See State v. White (1968), 15 Ohio St.2d 146.
 {¶ 26} There are circumstances, however, where a victim's testimony about the impact of the crime has consequence to certain legal issues. As charged in this case, the vehicular assault count required the state to prove that Owens caused "serious physical harm" to the victim. See R.C. 2903.08(A)(2). The term "serious physical harm" is defined in R.C. 2901.01(A)(5) as: "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) Any physical harm that carries a substantial risk of death; (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial *Page 17 
incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 27} The victim testified that the collision broke her pelvis. Because she was five months pregnant at the time of the collision, the doctors were unable to treat her and placed her on bed rest for the remainder of her pregnancy. The broken pelvis also caused the doctors to deliver her baby by Caesarian section, a procedure that left a scar which the victim described to the jury.
 {¶ 28} Apart from a single objection to the victim's description of her Caesarian section scar, Owens did not challenge any of this testimony. He has therefore waived the right to raise it as impermissible victim impact testimony on appeal. See State v.Jenkins, Cuyahoga App. No. 84644, 2005-Ohio-2824, ¶ 30, reversed in part on other grounds, In re Ohio Crim. Sentencing Statutes Cases,109 Ohio St.3d 313, 2006-Ohio-2109. Even had an objection been offered, it would have been unavailing. The victim's testimony went to establishing the required element of serious physical harm, so it was relevant and admissible for that purpose.
 IV *Page 18 {¶ 29} Owens next complains that the court abused its discretion by summarily refusing his request for a new, publicly-funded attorney of his own choosing and informing him that he could either keep assigned counsel or proceed to trial pro se. Owens maintains that had he been afforded a full hearing on his request for new counsel, he could have established good cause for the request for new counsel because trial counsel had not communicated matters of trial strategy with him, but focused solely on persuading him to agree to a plea bargain.
 {¶ 30} In State v. Cowans (1999), 87 Ohio St.3d 68, 72, 1999-Ohio-250, the supreme court stated:
 {¶ 31} "`An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.' United States v. Iles (C.A.6, 1990),906 F.2d 1122, 1130. `The trial judge may * * * [deny the requested substitution and] require the trial to proceed with assigned counsel participating if the complaint * * * is unreasonable.' State v. Deal
(1969), 17 Ohio St. 2d 17, 46 Ohio Op. 2d 154, 244 N.E.2d 742, syllabus. The trial court's decision is reviewed under an abuse-of-discretion standard. Iles, 906 F.2d at 1130, fn.8."
 {¶ 32} "Good cause" for substitution of counsel may be established when, for example, there is a "complete breakdown in communication" between the *Page 19 
accused and counsel. State v. Williams, 99 Ohio St.3d 439,2003-Ohio-4164, ¶ 55. This "breakdown" must be "of such magnitude as to jeopardize the defendant's right to effective assistance of counsel."State v. Ketterer, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 149.
 {¶ 33} We find that the consideration the court gave to Owen's request for substitution of counsel was commensurate with the facial merit of the request. A court is not required to hold a comprehensive evidentiary hearing on impromptu oral requests by a defendant who, just before jury selection, voices dissatisfaction with assigned counsel. In other contexts, we have held that "the scope of the hearing * * * should be reflective of the substantive merit of the motion itself. Hence, bold assertions without evidentiary support simply should not merit the type of scrutiny that substantiated allegations would merit." See State v.Hall (Apr. 27, 1989), Cuyahoga App. No. 55289 (addressing Crim. R. 32.1 motions to withdraw guilty pleas).
 {¶ 34} The record shows that shortly before the commencement of jury selection, the court noted that Owens had not dressed for trial. When the court asked Owens whether he knew that he was "coming for trial," Owens replied, "I'm just coming up here to dismiss my lawyer." The court asked Owens whether he had been given a chance to dress for trial, and Owens said "[t]hey didn't ask me. No." The corrections officer who escorted Owens to the courtroom disagreed *Page 20 
with Owens, saying that he had asked Owens if he wanted to dress for trial, and Owens "said no." The court ordered the corrections officer to take Owens and have him dressed for trial. In the interim, the court asked the parties to recount what plea discussions, if any, there had been in the case. Owens returned to the courtroom and apparently discussed a plea deal with his attorney. The court then told Owens:
 {¶ 35} "I don't want to put the cart ahead of the horse. If defendant wants to plead, that's fine. If he doesn't want to plead, that's fine, too. But the jury is lined up. You are saying you are coming up here to fire your attorney? Well, that's up to you if you want to fire your attorney, go ahead. Then you are your own attorney. You've had months in jail to get your own attorney. You haven't. If you want to be your own attorney, go ahead.
 {¶ 36} "I've never seen anybody — this is my 35th year — never seen anybody win a case pro se. I've never seen anybody do well pro se. I've never seen anyone but make the case far worse. And I've seen your abilities to talk as we watched your tape with the police officer. Some people dig themselves in deeper and deeper as they go. That's up to you to assess your own skills. If you think you have the experiences as an attorney to handle the case, by all means, it's your privilege if you want to be your own attorney. But [trial counsel] is an excellent attorney. I've seen him here many, many years. He knows what he is *Page 21 
doing. He's experienced at trial, if you want to use him, that's great. If you don't want to, that's your privilege."
 {¶ 37} Owens told the court that "I don't feel he is representing me to his ability. He hasn't talked to me about my case, hasn't advised me." The court told Owens that it didn't want to hear what discussions Owens had with his attorney. Owens said, "I don't feel this man is representing me right." The court told Owens that it was "not here to listen to your problems what [sic] your plea should be." He informed Owens that the jury was being brought into the courtroom and that trial would be commencing. It said "I don't postpone trials so you can go — you know, the dream team isn't available. You wanted to hire them you could have hired them. You're the one on trial here, sir, and you should make your decisions very carefully."
 {¶ 38} After the jury had been selected and empaneled, Owens asked to address the court on the record. He told the court that "I feel I got inadequate counsel. My counsel stated to me yesterday he don't want to be on my case." Defense counsel replied, "I did not." Owens claimed that counsel had been pressuring him to take a plea, but "doesn't come to talk to me about the case. All he talks about a plea bargain like. He is pressuring me to plea bargain." When the court told Owens that he did not have to take a plea bargain, Owens said, "[h]e don't inform me about my case. He doesn't talk about nothing." When the *Page 22 
court reminded Owens that it had conducted three pretrials on the case, Owens replied, "[h]e doesn't represent me." The court again reminded Owens about the pretrials that had been held in the case and told him that it was not forcing him to accept a plea bargain. It told Owens to "[f]ocus on your trial now." Owens said that he was aware that there had been scheduled pretrials, but "I didn't see nobody. I never talked to my lawyer or nobody." The court ordered Owens to be seated and brought the jury in for opening arguments.
 {¶ 39} This distillation of the record convinces us that the court did not abuse its discretion by summarily denying Owens' request to "fire my attorney." Despite having the opportunity to articulate reasons as to why he wished to discharge his attorney, Owens could only say that trial counsel had focused on communicating progress on plea bargaining as opposed to conferring with him on matters of trial strategy. The state had very strong evidence of Owens' guilt, including the testimony of several police officers and Owens' own statements made in an interview with the police. Moreover, Owens had a prior conviction and was awaiting trial on a separate criminal case. Counsel may well have concluded that the seeming strength of this evidence along with Owens' prior criminal record made a plea bargain the most advisable way of resolving the case for Owens. The court knew this from its discussions with counsel, so it had no obvious reason to delve any further into the basis for Owens' request. The court *Page 23 
gave Owens' request a degree of consideration that was commensurate with the facial merit of the request.
 V {¶ 40} Owens complains that the state engaged in improper closing argument by (1) speculating how much worse the victim's injuries could have been, (2) urging the jury to consider his lack of remorse and (3) arguing that the jury should decide the case on the basis of what was "fair" and that "fairness" required the jury to consider the victim's injuries.
 {¶ 41} "The test for prosecutorial misconduct during closing argument is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. State v.Smith (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883. To determine prejudice, the record must be reviewed in its entirety.State v. Lott (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293." State v.Frazier, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 170. Parties are granted wide latitude in closing arguments. State v. Smith, 97 Ohio St.3d 367,377, 2002-Ohio-6659. This latitude is said to allow the state to strike "hard blows," but not "foul ones." Berger v. United States (1935),295 U.S. 78, 88.
 A {¶ 42} The state argued that on the day Owens' offenses occurred, "he made no good decisions" and that the "only good thing about what happened in this *Page 24 
case is we are not standing here and prosecuting a murder or manslaughter case because he didn't kill her." Owens argues that this comment invited the jury to speculate on what kind of case this would have been had the victim died and that it suggested to the jury that Owens' charges were a "bargain" in light of how serious the charges could have been.
 {¶ 43} We disagree with Owens' characterization of the state's argument. The seriousness of the victim's injuries were an element of the vehicular assault charge, so the state had the right to argue that point with vigor. There was no testimony that the victim's injuries were life-threatening, so the state may have engaged in hyperbole when it alluded to it being fortunate that the accident did not kill the victim. Nevertheless, the state's argument did not invite the jury to speculate on what would have happened if the victim had died. It was merely a permissible comment on the severity of the victim's injuries in light of the serious physical harm element of vehicular assault.
 B {¶ 44} The state also noted that during Owens' statement to the police, he initially blamed the victim for the collision, telling the detective that she pulled out in front of him. The state then noted that Owens made no inquiry about the victim until the detective told him that the health of the victim and her unborn *Page 25 
child was undetermined. "Oh, then he wants to know how she is doing only after he realizes what it is that he is going to be charged with."
 {¶ 45} This comment was not improper because there was conflicting evidence on the point. State v. Nields, 93 Ohio St.3d 6, 2001-Ohio-1291, at ¶ 39. As noted by the state, in his interview with the police, Owens blamed the victim for causing the collision, despite ample eyewitness testimony that he ran a red light and struck the victim as her car waited in an intersection to make a turn. Owens blamed the police for starting the events into motion, questioning why they had stopped him in the first place and saying that he would not have fled if he had known he likely would have faced misdemeanor drug charges. The state's comment permissibly blunted Owens' comments.
 C {¶ 46} Finally, Owens complains about the state urging the jury to be "fair" to the victim. In closing argument, defense counsel noted the benign way in which the interview opened with questions about Owens' personal information, but then transformed into a substantive discussion of the offenses, with incriminating statements made by Owens. Defense counsel asked the jury, "where is the fairness in that, you know? Doesn't Kenneth Owens deserve to be treated fairly? Don't we all deserve to be treated fairly?" The state responded by telling the jury, "[i]t' s kind of an ironic statement or an ironic thing to mention *Page 26 
fairness. It's pretty obvious that the Defendant wasn't concerned with what is fair to everyone else on the road." The state then went on to note the number of ways in which Owens' actions had resulted in injury and inconvenience to the victim, asking whether any of those consequences were "fair" to the victim.
 {¶ 47} We find no error with respect to the state's references to "fairness." Defense counsel opened the door to that line of argument by referencing the circumstances under which the police interviewed Owens. The state's references to fairness were in response to defense counsel, but arguably couched in terms going to the element of serious physical harm relating to the victim's ordered bed rest and Caesarian section, and the potential loss of employment due to the length of her convalescence.
 VI {¶ 48} Owens next argues that the court improperly imposed a prison term on count 2, failure to comply, because it did not consider the mandatory sentencing criteria set forth in R.C. 2921.331(C)(5)(b). We summarily overrule this assignment of error on authority of State v.Anderson, Cuyahoga App. No. 83285, 2004-Ohio-2858, ¶ 22, in which we stated:
 {¶ 49} "The court found defendant guilty of the charges based upon the facts presented by the State; therefore, the court necessarily considered those facts which fell within R.C. 2921.331
(C)(5)(b)(i)-(ix). The court is not required by *Page 27 
statute or otherwise to state its consideration of those statutory factors on the record nor to make any specific finding in relation thereto. Based on the foregoing, we find that the record reflects that the trial court gave consideration to the factors set forth in R.C. 2921.331(C)(5)(b)(i)-(ix)[.]" See, also, State v. Jones, Cuyahoga App. No. 89499, 2008-Ohio-802; State v. Williams, Summit App. No. 23176,2007-Ohio-622.
 VII {¶ 50} Finally, Owens argues that he received ineffective assistance of counsel due to counsel's failure to object to improper jury instructions, failure to object to the state's closing argument, failure to object to the defective indictments, and failure to object to improper sentencing.
 {¶ 51} To prevail on a claim of ineffective assistance of defense counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance resulted in real prejudice. See Strickland v.Washington (1984), 466 U.S. 668, 694; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 52} Apart from sustaining the second assignment of error, our affirmance of the remaining assignments of error shows that no error occurred. With absence of any error, counsel had no duty to offer objections. See State v. Bays, 87 Ohio St.3d 15, 28, 1999-Ohio-216. *Page 28 
Judgment affirmed in part and reversed in part.
It is ordered that the parties bear their own costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J., CONCURS
ANTHONY O. CALABRESE, JR., P.J., CONCURS IN JUDGMENT ONLY
[1] The videotape was not transcribed, but it was played to the jury and later admitted into evidence.
[2] The videotape shows that as the detective filled out the information sheet, he appeared to be consulting a folder containing the police reports to verify the accuracy of Owens' answers. This implies that he already had the information that he desired.
[3] R.C. 2903.08(C)(2) states: "Except as otherwise provided in this division, vehicular assault committed in violation of division (A)(2) of this section is a felony of the fourth degree. Vehicular assault committed in violation of division (A)(2) of this section is a felony of the third degree if * * * in the same course of conduct that resulted in the violation of division (A)(2) of this section, the offender also violated section 4549.02 * * * of the Revised Code."
[4] A specification which simply enhances the penalty for the offense is not considered elemental. See State v. Allen (1987),29 Ohio St.3d 53, 55 (an elemental specification elevates the degree of the offense; an enhancement provision increases only the penalty). *Page 1