[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 564.]

THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v*. KIRK, APPELLEE AND CROSS-APPELLANT.

[Cite as *State v. Kirk*, 1995-Ohio-204.]

*Witnesses—Criminal law—Trial court may exclude person from appearing as a witness on behalf of a criminal defendant at trial, when—Defendant entitled to request an instruction that jury should draw no inference from the absence of a witness because the witness was not available to either side, when.*

1. A trial court may exclude a person from appearing as a witness on behalf of a criminal defendant at trial if the court determines that the witness will not offer any testimony, but merely intends to assert the Fifth Amendment privilege against self-incrimination. (*Columbus v. Cooper* [1990], 49 Ohio St.3d 42, 550 N.E.2d 937, distinguished and limited.)

2. Where a defendant is not entitled to call a witness to the stand because of the witness' intention to assert the Fifth Amendment privilege against self-incrimination, the defendant is entitled to request an instruction that the jury should draw no inference from the absence of the witness because the witness was not available to either side.

(No. 94-523—Submitted April 25, 1995—Decided July 26, 1995.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 93AP-925.

———————————

{¶ 1} On the night of July 20, 1991, a crowd gathered at the Deaf Club at 323 East Woodrow in the south end of Columbus following a softball tournament. At approximately 12:15 a.m. Philip Hoover went to the club and tried to order a beer. A crowd surrounded Hoover, including the victim, James Helling, and

Charles Moore, the president of the Deaf Club. Moore, through Helling and another, acting as interpreter, told Hoover that he would not be served and then escorted him to the door.

{¶ 2} At the door, Helling and Hoover became involved in an argument. Helling then pushed Moore out of the way and went out the door. A large crowd followed. The crowd remained on the club property, but Helling followed Hoover to the sidewalk in front of the club. According to Moore, Hoover tried to hit Helling with a hammer, but missed. Hoover and Helling then became involved in a scuffle.

{¶ 3} Moore noticed a second man, later identified as defendant, Raymond J. Kirk, walking behind a parked truck in the vicinity of the fight. The man fired a shot in the air, allegedly to disperse the crowd that had gathered.

{¶ 4} Hoover and Helling continued to fight. Defendant approached Hoover and Helling from behind and grabbed Helling in an attempt to pull him off Hoover. Defendant asserts that Helling then tried to attack him with a knife. Defendant shot Helling one time. Helling allegedly lunged at defendant with the knife again, at which time defendant shot Helling a second time. The police did not recover a knife.

{¶ 5} Defendant was indicted on one count of aggravated murder with prior calculation and design. The indictment did not include a death-penalty specification, but did include a firearm specification.

{¶ 6} A jury trial began on May 17, 1993. On May 26, the jury returned a verdict finding the defendant not guilty of aggravated murder, but guilty of the lesser included offense of voluntary manslaughter. The jury also found defendant guilty of the firearm specification. The court imposed a sentence of from six to twenty-five years, plus an additional three-year term of actual incarceration on the firearm specification.

{¶ 7} Defendant appealed to the Franklin County Court of Appeals, raising two assignments of error. In his first assignment of error, defendant argued that the

trial court erred in excluding Philip Hoover from taking the stand in front of the jury. Defendant argued in his second assignment of error that improper "other act" evidence was admitted at trial. In the court of appeals' opinion rendered on February 17, 1994, the court sustained the first assignment of error, but overruled the second. The court of appeals reversed and remanded the case for a new trial.

{¶ 8} The cause is now before this court pursuant to the allowance of a discretionary appeal and cross-appeal.

_____

*Michael Miller*, Franklin County Prosecuting Attorney, and *Stephen L. Taylor*, Assistant Prosecuting Attorney, for appellant and cross-appellee.

*Judith M. Stephenson*, Franklin County Public Defender, and *Allen Adair*, Assistant Public Defender, for appellee and cross-appellant.

_____

**WRIGHT, J.**

{¶ 9} The issue presented in this case is whether defendant, pursuant to the Compulsory Process Clause of Section 10, Article I of the Ohio Constitution, has the right to place a witness on the witness stand for the purpose of having the witness invoke the Fifth Amendment privilege against self-incrimination in front of the jury.

{¶ 10} After the state rested its case-in-chief, the parties and the court addressed the possible testimony of Philip Hoover. The court did this out of the presence of the jury. The court addressed Hoover's attorney, who said that he had advised Hoover not to testify. The court then personally addressed Hoover. The court advised Hoover that, if he were called by the defense, he would be asked questions dealing with the events involving the death of James Helling. The court further advised Hoover that anything he said about those events could be used in any future indictment against him concerning the events leading to the death of Helling. Hoover acknowledged that he understood the possible consequences.

**{¶ 11}** The court advised Hoover that he had a Fifth Amendment right not to answer questions dealing with Helling's death if he believed the answers would incriminate him. The court then asked Hoover what his intention would be in terms of answering questions put forth by defense counsel. Hoover said that, based upon consultation with his attorney, he would assert his Fifth Amendment privilege.

**{¶ 12}** Based on Hoover's statements, the prosecution argued that Hoover could not be called by either the state or the defense for the sole purpose of invoking the Fifth Amendment in front of the jury. Defense counsel argued that although case law prohibited the state from calling a witness who intends to invoke the Fifth Amendment, defense counsel is not prohibited from taking such action. Defense counsel said his intention in calling Hoover to the witness stand was not to demonstrate that he would assert his Fifth Amendment privilege, but to have Hoover testify. Defense counsel's intent was to prevent the jury from drawing any adverse inferences from any defense failure to call Hoover to the stand.

**{¶ 13}** The court recognized that both parties were entitled to an instruction preventing the jury from drawing any such adverse inference. However, the parties did not request such an instruction and the court did not give any instruction on the matter.

**{¶ 14}** The trial court found that Hoover would refuse to answer any questions based on his Fifth Amendment right to remain silent. The court concluded that the defense, like the state, should be barred from calling a witness for the sole purpose of showing the jury that the witness exercised his right to remain silent. The court then excused Hoover from any further responsibility to respond to the subpoena. When defense counsel protested, the court reiterated its ruling that no party should call a witness to demonstrate that he would exercise his Fifth Amendment rights. Defendant asserted that this ruling violated his right to compulsory process to procure the attendance of witnesses on his behalf.

**{¶ 15}** This court addressed a similar issue in *Columbus v. Cooper* (1990), 49 Ohio St.3d 42, 550 N.E.2d 937.  In *Cooper* a police officer arrested Scott Cooper for operating a motor vehicle while under the influence of alcohol.  Cooper asserted that the police officer misidentified him and that John Osborne, who was in the van when it was stopped, was the driver.  Prior to trial, the court held a hearing to determine whether Cooper could call Osborne as a witness.  The court swore Osborne in and advised him of his Fifth Amendment privilege against self-incrimination and his right to have an attorney appointed on his behalf.  After consulting with an attorney, Osborne agreed to testify that he owned the van in question, that he was in the van the night the police stopped it, and that he (Osborne) removed the keys to the van and placed them in his pocket when the van was stopped.  Osborne exercised his Fifth Amendment privilege when asked whether he was driving the van on the night in question, whether, instead, Cooper was driving the van; and where he (Osborne) was seated when the van, was stopped.

**{¶ 16}** Cooper argued that although Osborne intended to assert his Fifth Amendment privilege with regard to some of the questions, he was nevertheless entitled to call Osborne as a witness at trial.  The court determined that inasmuch as Osborne could assert his Fifth Amendment privilege at trial, Cooper would not be permitted to call Osborne as a witness.

**{¶ 17}** The court of appeals reversed the decision of the trial court, holding that the trial court's refusal to allow Osborne to take the stand denied Cooper his rights under the Compulsory Process Clause.  This court affirmed the judgment of the court of appeals.  We concluded that, pursuant to the Compulsory Process Clause, a trial court may not exclude a person who has previously asserted his Fifth Amendment privilege against self-incrimination from appearing as a witness on behalf of a criminal defendant. *Id.* at paragraph one of the syllabus.

**{¶ 18}** The present case can be distinguished from *Cooper* on two bases: (1) the privilege must be asserted prior to trial, and (2) the witness must intend to testify "on behalf of" the defendant.

**{¶ 19}** In the present case, Hoover was voir-dired in the middle of the trial. Furthermore, and more important, Hoover did not intend to testify "on behalf of" the defendant. In fact, Hoover did not intend to testify at all. Therein lies the essential difference between this case and *Cooper*.

**{¶ 20}** Hoover was notified in an *in camera* hearing that defense counsel intended to ask him questions about the night defendant killed Helling. He knew the topic of the questions and told the court of his intent to assert his Fifth Amendment privilege and refuse any questions whatsoever. It is fruitless for defendant to assert that Hoover was going to testify on his behalf, as Hoover notified the court that he would not answer any questions. The holding in *Cooper* should be and is limited to its facts.

**{¶ 21}** *United States v. Arnott* (C.A. 6, 1983), 704 F.2d 322, is more closely related to the facts of this case than those of *Cooper*. In *Arnott* the defendant wanted to offer the testimony of Joseph Frontiera to corroborate his defense of entrapment. The defendant sought to limit the scope of cross-examination of Frontiera by the prosecution to the subject matter of direct examination. It was theorized that Frontiera would be able to respond to various questions on direct examination concerning the issue of entrapment without incriminating himself, but that cross-examination could lead to incriminating testimony if not limited by the court.

**{¶ 22}** During voir-dire examination, Frontiera indicated that he would invoke the Fifth Amendment and refuse to answer any potentially incriminating questions unless he was given full immunity by the court. The defendant wanted Frontiera to take the stand and assert the privilege in front of the jury. The court did not permit this. The appellate court ruled that it was not error to deny

defendant's request that Frontiera be required to assert the Fifth Amendment privilege in the jury's presence. Appellate courts in other circuits have ruled similarly. See *United States v. Johnson* (C.A. 1, 1973), 488 F.2d 1206; *United States v. Beye* (C.A. 9, 1971), 445 F.2d 1037; *Bowles v. United States* (C.A.D.C. 1970), 439 F.2d 536 (*en banc*), certiorari denied (1971), 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533.

{¶ 23} In the present case, defendant did not have a right to place Hoover on the stand for the sole purpose of having him assert his Fifth Amendment privilege in front of the jury. Where a defendant is not entitled to call a witness to the stand because of the witness' intention to assert the Fifth Amendment privilege against self-incrimination, the defendant is entitled to request an instruction that the jury should draw no inference from the absence of the witness because the witness was not available to either side. Such an instruction is intended to reduce the danger that the jury would, in fact, draw an inference from the absence of a witness who could corroborate defendant's testimony.

{¶ 24} Furthermore, a trial court may exclude a person from appearing as a witness on behalf of a criminal defendant at trial if the court determines that the witness will not offer any testimony, but merely intends to assert the Fifth Amendment privilege against self-incrimination.

{¶ 25} In defendant's cross-appeal, defendant asserts that he was prejudiced by the admission of evidence based upon a similar incident which occurred in May 1991. Upon review of the record, we find the trial court did not abuse its discretion in admitting this "other act" evidence, as the admission was not prejudicial.

{¶ 26} For the reasons stated above, the judgment of the court of appeals is reversed in part and affirmed in part, and the judgment of the trial court is reinstated.

*Judgment reversed in part*

*and affirmed in part.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.